Billy Earl **NICHOLSON** and Betty M. Nicholson

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.**

Civ. A. No. 80–2025A.

United States District Court, N. D. Georgia, Atlanta Division.

June 20, 1981.

---

Alfed D. Fears, Jackson, Ga., and A. J. Welch, McDonough, Ga., for plaintiffs.

Murray & Temple, Decatur, Ga., for defendant.

RICHARD C. FREEMAN, District Judge.

## ORDER

Plaintiffs filed this lawsuit to recover benefits under a homeowners insurance policy issued by the defendant. The case is presently before the court on the defendant's motion for summary judgment, Rule 56, Fed.R.Civ.P., and the plaintiffs' motion for leave to amend their complaint, Rule 15(a), Fed.R.Civ.P. Before reaching the merits of the parties' motions, we will review the relevant facts.

\*  \*  \*  \*  \*  \*

Plaintiff Betty M. Nicholson and plaintiff Billy Earl Nicholson separated on July 9, 1979, and Betty Nicholson was awarded temporary possession of their residence on Lombard Road, Ellenwood, Georgia by order of the Superior Court of Henry County, Georgia on August 24, 1979. Aware that the insurance on the residence was about to expire, Betty Nicholson approached Mr. Robert S. Stephens (Stephens), an agent of defendant Nationwide Mutual Fire Insurance Company (Nationwide), in September to extend and increase the coverage from $35,000 to $50,000. Betty Nicholson informed Stephens that she had been awarded possession of the property and that she was claiming at least a one-half undivided interest in the house and its contents. She further informed Stephens that she was making the mortgage payments to the Peoples Bank of Lithonia (Bank), that she had paid the past insurance premiums on the house, and that she wanted the new policy placed in her name. However, because her husband held title to the property, Stephens told Mrs. Nicholson that the policy could not be issued in her name but that her interests would be protected if the policy were issued in Mr. Nicholson's name.

On September 21, 1979, Stephens sent the application to Mrs. Nicholson for her husband's signature and informed her that a copy of the policy would be forwarded to the mortgagee bank upon payment of the premium. Mrs. Nicholson paid the premium of $235.00 out of her own funds. A copy of the policy was sent to Mr. Nicholson at the insured residence several days prior to the fire which gave rise to this lawsuit, and was placed by Mrs. Nicholson with other papers belonging to her and her husband.

On October 5, 1979, the residence and contents were destroyed or damaged by fire, resulting in an estimated loss of $75,000 plus $10,000 in additional living expenses. The plaintiffs notified Nationwide of the fire and loss within two weeks, and were furnished with proof of loss forms. Mr. Nicholson, who is illiterate, secured the services of an attorney to assist him in completing the proof of loss forms, which were returned on December 9, 1979.

Due to the confusion which followed the fire, the plaintiffs were unable to locate their copy of the policy. Mr. Nicholson went to the Bank in the last week of November or the first week of December 1979 to get a copy of the policy. However, the Bank had been furnished only a copy of the declarations page. A request to locate the policy was also made to Stephens, the issuing agent.

Beginning shortly after the fire and continuing through January 1980, the plaintiffs negotiated with a Nationwide adjuster regarding payment of their claim. The adjuster inspected and inventoried the house, and made measurements preliminary to the necessary repairs. The adjuster advised the plaintiffs on the quickest and most practical way of making repairs so as to put the house in livable condition and prevent further losses. The adjuster assured the plaintiffs that Nationwide would cover the loss and that the plaintiffs would be back in the house within a very short time.

On January 30, 1980, Nationwide's attorney demanded a sworn statement from the plaintiffs, but failed to designate a time and place for examination. By letter dated February 11, 1980, Mrs. Nicholson's attorney advised Nationwide's counsel that the Nicholsons were available for statements and requested that a date and time therefor be set. When no response was received, another letter was sent to Nationwide on March 28, 1980. The statements were finally taken on April 15, 1980. Nationwide informed the plaintiffs that their claim was being denied on May 14, 1980.

At the request of her attorney, Mrs. Nicholson once again searched the house for the policy on or around October 19, 1980. The policy was located and turned over to her attorney on October 24, 1980. The plaintiffs filed this lawsuit on October 31, 1980. Nationwide, which had paid the mortgagee Bank $22,664.65 under the policy, filed a counterclaim for that amount.

\* \* \* \* \* \*

Under Georgia law, actions on "simple contracts in writing" must be brought within six years. Ga.Code Ann. § 3–705. However, numerous Georgia decisions have held that a provision in an insurance policy limiting the time in which suit may be brought to twelve months after the inception of the loss is valid and will bar an action brought after expiration of that time. *Melson v. Phoenix Insurance Co.*, 97 Ga. 722, 25 S.E. 189 (1896).

In its motion for summary judgment, Nationwide contends that the plaintiffs' action is barred by a twelve-month contractual limitation on suit contained in the policy. General Condition No. 9 of the policy reads, in part:

Suits. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and:

a. if under coverage of real or personal property, unless commenced within twelve months next after inception of the loss; . . . .

Since the plaintiffs' loss occurred on October 5, 1979, and this suit was not commenced until October 31, 1980, Nationwide argues that this suit is barred and it is entitled to judgment as a matter of law.

Plaintiffs concede that this suit was not brought within twelve months of the fire which destroyed their home but nevertheless contend that this action is not barred. In support of their contention, the plaintiffs argue that (1) the twelve-month limitation period was tolled for either (a) the period from the time the plaintiffs submitted their proof of loss to the company until the time their claim was denied or (b) the period from the time the plaintiffs submitted their

proof of loss until sixty days thereafter, when the insurer became liable for payment; (2) the twelve-month limitation provision is amended by General Condition No. 12 to conform to the six-year limitation period for suits on contracts provided by Georgia law; and (3) that the defendant is estopped to assert the limitations clause because either (a) the company led the plaintiffs to believe that their claims would be allowed so that no lawsuit would be necessary, or (b) the company has not insisted upon strict compliance with the terms of the policy in other respects. Because we believe that at least one of the plaintiffs' contentions has merit, we must deny the defendant's motion.

*Estoppel/Waiver.* The plaintiffs argue that there exists a question of fact as to whether the defendant has waived, or is estopped by his conduct from asserting, the twelve-month limitation on suit. It is well settled in Georgia that conduct of the insurer may constitute a waiver of, or estop it from asserting, contractual provisions. Thus, in *Government Employees Insurance Co. v. Gates*, 134 Ga.App. 795, 216 S.E.2d 619 (1975), the court held that the company had waived the notice-of-accident provisions in the policy when it received the claim forms and commenced an investigation some six months after the accident.

In cases involving limitation-on-suit provisions, the Georgia courts look for

> evidence of any affirmative promise, statement or other act of the defendant or any evidence of actual or constructive fraud to lead the plaintiff into believing that the defendant intended to enlarge on the limitation period contained in the contract . . . .

*Johnson v. Georgia Farm Bureau Mutual Insurance Co.*, 141 Ga.App. 859, 861, 234 S.E.2d 693, 694 (1977). In that case, the court held that the plaintiff's suit was barred because not brought within twelve months even though the parties had engaged in negotiations from shortly after the loss occurred on December 27, 1974 through October 1975. The court noted that

"[t]hereafter there is no evidence of continued effort to negotiate in any manner." *Id.* Suits brought more than twelve months after the loss have been permitted when the suit was delayed because of a direct promise by the insurer to pay the claim, *Stanley v. Sterling Mutual Life Insurance Co.*, 12 Ga. App. 475, 77 S.E. 664 (1913), or when the parties' negotiations continued past the expiration of the twelve-month period, *Nee v. State Farm Fire & Casualty Co.*, 142 Ga. App. 744, 236 S.E.2d 880 (1977).

■ However, the plaintiffs here were notified on May 14, 1980, some five months before the period for bringing suit expired, that their claim was being denied. In similar cases, the Georgia courts have repeatedly held that the insured's claim is barred. *See, e. g., Draughn v. United States Fidelity & Guaranty Co.*, 144 Ga.App. 272, 241 S.E.2d 52 (1977). Moreover, in this case, there is no evidence that the defendant, after the denial, led the plaintiffs in any way to believe that further consideration was being given to their claim. On these facts, we find no basis for holding that the insurer has waived compliance with, or is estopped from asserting, the twelve-month limitation period.

*Statutory conflict.* General Condition No. 12 of the policy provides:

> Terms of Policy Conformed to Statute. Terms of this policy which are in conflict with the statutes of the State in which it is issued are hereby amended to conform to such statutes.

The plaintiffs contend that this language amends the limitation-on-suit provision in the policy and incorporates the six-year limitation period of Ga.Code Ann. § 3–705. When the amendatory language is contained in the limitations clause itself, the Georgia Supreme Court has held that the longer statutory limitations period governs. In *Queen Tufting Co. v. Fireman's Fund Insurance Co.*, 239 Ga. 843, 239 S.E.2d 27 (1977), the court held that the plaintiff's suit was not barred when the limitations clause in the policy provided that suit must

be brought within twelve months "unless a longer period of time is provided by applicable statute."

However, in this case, the conforming language is contained in a separate clause and provides that the policy is amended to conform to statutory provisions only when there is a conflict between the policy and state statute. In construing a similar policy provision, the Georgia Court of Appeals recently concluded that there was no conflict between a twelve-month policy limitation and the six-year statutory period since Georgia law permits the parties to contract for a shorter period. Accordingly, the twelve-month limitation in the policy was enforceable and barred the plaintiff's suit. *Gravely v. Southern Trust Insurance Co.*, 151 Ga.App. 93, 258 S.E.2d 753 (1979). We believe that *Gravely* controls this question and requires that the plaintiffs' arguments on this point be rejected.

*Tolling the limitations period.* Finally, the plaintiffs argue that, even if the twelve-month limitation may properly be asserted by the defendant, their lawsuit is not barred because the period was tolled for either the period from the time the plaintiffs submitted their proof of loss to the company until the time their claim was denied, or at least for the period from the time the plaintiffs submitted their proof of loss until sixty days thereafter when the insurer became liable for payment of the claim.

The Georgia courts have not had occasion to address the issue whether the contractual limitation period is tolled during the period of negotiations between the insurer and the insured. The question was raised in *Looney v. Georgia Farm Bureau Mutual Insurance Co.*, 141 Ga.App. 266, 233 S.E.2d 248 (1977), but not reached because that action was not commenced until over twelve months after the insurer had denied liability. However, the Georgia courts have held that the twelve-month period is tolled when the parties agree to submit a disputed claim to arbitration. *Yates v. Cotton States Mutual*

*Insurance Co.*, 114 Ga.App. 360, 151 S.E.2d 523 (1966). Thus, in *Peeples v. Western Fire Insurance Co.*, 96 Ga.App. 39, 99 S.E.2d 349 (1957), the court held that, when the parties had orally agreed to have an appraisal made, the limitations period was tolled during the period the appraisal was pending.

Courts in other jurisdictions have, however, expressly held that the contractual limitations period is tolled for the period of negotiations between the parties. *Clark v. Truck Insurance Exchange*, 598 P.2d 628 (Nev.1979); *Tom Thomas Organization, Inc. v. Reliance Insurance Co.*, 396 Mich. 588, 242 N.W.2d 396 (1976); *Peloso v. Hartford Fire Insurance Co.*, 56 N.J. 514, 267 A.2d 498 (1970). While acknowledging the validity of twelve-month limitation-on-suit provisions, the courts in these cases have recognized that, because of the delays either required by the policy or inherent in the claims process, the insured does not in fact have a full twelve months in which to commence an action. As the *Tom Thomas* court observed:

Substantial delays are built into standard insurance policies. The insured is generally allowed 60 to 90 days to file proof of loss. The insurer is generally given another 60 days to pay or settle the claim.

Notwithstanding diligence by both parties at all stages of the claim procedure, considerable time often elapses before the insured learns whether the insurer will pay. Even if the insured promptly reports a loss to his insurance agent, discussions concerning resolution of the claim may take weeks. Additional time often passes before the insurance company provides a form for filing proof of loss. Even then the insured does not know whether it will be necessary to start an action; under the policy in this case, payment is not required until sixty days after "acceptance" by the insurer of the proof of loss. No time limit for acceptance is imposed.

While inclusion of such terms in a policy clarifies the claims procedure, the practical consequence is considerable shortening of the time within which suit may be commenced.

242 N.W.2d at 398. The court then held that

> [t]he appropriate resolution is to allow the contractual period of limitation to run from the date of the casualty or, as provided in this policy, discovery of the loss, but to toll the running of the limitation from the time the insured gives notice until the insurer formally denies liability.

Id. at 399–400 (footnote omitted).

The court in Clark v. Truck Insurance Exchange, 598 P.2d 628, found the limitation period provision to be ambiguous. Following the general rule, the court construed the clause strongly against the insurer:

> If the limitation period is construed to commence to run from the date of the fire, then the entire period could, as here, be consumed by the built-in delays of the policy and by the time in which the parties attempt to negotiate the claim. It would not be reasonable for the insured to anticipate such construction. We construe the clause to allow the period of limitations to run from the date of the casualty, but the period will be tolled from the time appellant gave notice of the loss until respondent formally denies liability.

Id. at 629 (footnotes and citations omitted). The court observed that this approach best accommodated the legitimate expectations of both the insured and the insurer. As explained by the court in Peloso v. Hartford Fire Insurance Co., 56 N.J. 514, 267 A.2d 498:

> In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what

amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit. We think this approach is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise.

Id. at 501–02, 267 A.2d 498. Accordingly, the Peloso court held that the insured's suit, filed eighteen months after the fire but only nine months after liability was denied, was timely.

■ If presented squarely with the issue, we believe this is the approach the Georgia courts, which often rely on well-reasoned decisions from other jurisdictions, see, e. g., Nationwide Mutual Fire Insurance Co. v. Collins, 136 Ga.App. 671, 222 S.E.2d 828 (1975), would take. It is in accord with well settled general principles of Georgia law that insurance policies are, like all contracts of "adhesion," in the event of ambiguity, to be construed most strongly against the party preparing it and in favor of coverage, Rossville Federal Savings & Loan Association v. Insurance Company of North America, 121 Ga.App. 435, 174 S.E.2d 204 (1970), especially where the effect of the provision is a forfeiture of the insured's benefits under the policy, Norfolk & Dedham Mutual Fire Insurance Co. v. Cumbaa, 128 Ga.App. 196, 196 S.E.2d 167 (1973). In this case, the plaintiffs clearly had less than twelve months in which to commence legal action to protect their rights. Excluding the period from the time plaintiffs gave notice of their loss to the time the insurer formally denied liability, the most equitable construction of the contractual limitation period, the plaintiffs' action was timely filed.

Moreover, there is an alternative basis, which we believe is expressly embraced by the Georgia decisions, for our holding that the plaintiffs' suit is not barred. The loss payable clause in Part III of the policy provides that "[t]he amount of loss for which Nationwide may be liable shall be payable 60 days after Proof of Loss . . . is

received by the Company . . . ." Thus, the defendant's liability under the policy did not mature until that sixty-day period expired. Courts construing such provisions have held that they effectively extended the time in which suit could be brought because the limitations period did not begin running until the defendant's liability, and the plaintiff's cause of action, matured. *See, e. g., Zurn Engineers v. Eagle Star Insurance Co.*, 61 Cal.App.3d 493, 132 Cal. Rptr. 206 (1976); *Traverse City State Bank v. Ranger Insurance Co.*, 72 Mich.App. 150, 249 N.W.2d 333 (1976). *Cf. Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (Alaska 1973) (limitations period did not begin to run until insured's cause of action accrued when the insurer denied liability).

The Georgia courts have reached the same result. In *Burton v. Metropolitan Life Insurance Co.*, 48 Ga.App. 828, 173 S.E. 922 (1934), the court considered a policy which provided that any loss thereunder was not due and payable until six months after the insured submitted proof of loss. The court held that the applicable limitations period did not run until six months after the insurer received the proof of loss. This is consistent with the general rule, followed in Georgia, that, where a condition precedent to a right of action exists, the statute of limitations does not begin to run until that condition is performed. *See, e. g., Ginn v. State Farm Mutual Automobile Insurance Co.*, 417 F.2d 119 (5th Cir. 1969); *Thomas v. Hudson*, 190 Ga. 622, 10 S.E.2d 396 (1940). *Cf. Decatur Federal Savings & Loan Association v. York Insurance Co.*, 147 Ga.App. 797, 250 S.E.2d 524 (1978) (notice to loss payee is a condition precedent to insurer's binding payee to limitation on suit and other policy provisions).

In the case at bar, the sixty-day loss payable period markedly reduced the time in which the plaintiffs could bring suit. We believe the limitations period must be tolled for at least those sixty days. Applying that rule here, the plaintiffs' action was timely filed and the defendant's motion must be denied.

\* \* \* \* \* \*

■ Plaintiffs move the court for leave to amend their complaint to permit plaintiff Betty M. Nicholson to assert a claim for violation of the duties of fair dealing and representation owed her by Nationwide and its agent Stephens in refusing to issue the policy in her name. Rule 15(a), Fed.R. Civ.P., provides that leave to amend not of right should be "freely given when justice so requires." Amendment should be permitted unless there is good reason for not doing so, such as dilatory neglect on the part of the party seeking the amendment or undue prejudice to the party opposing the amendment. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 288 F.2d 69 (5th Cir. 1961). Neither is present in this case. Although our ruling that the plaintiffs' original complaint is not time barred seems to preclude proof of a key damages element of the amended complaint, pleading alternative or inconsistent theories of recovery is clearly proper under the federal rules. We will allow the amendment.

Accordingly, the defendant Nationwide Mutual Fire Insurance Company's motion for summary judgment is DENIED. The motion of plaintiffs Billy Earl Nicholson and Betty M. Nicholson for leave to amend their complaint is GRANTED.

IT IS SO ORDERED.